1
2
3
4                            UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7     FRANK EUGENE MCCARTHY,                    Case No.  18-cv-05705-DMR
                     Plaintiff,
8
            v.                                  **ORDER ON CROSS MOTIONS FOR**
9                                               **SUMMARY JUDGMENT**
10    NANCY BERRYHILL,
                                                Re: Dkt. Nos. 26, 31
                     Defendant.
11

12          Plaintiff Frank McCarthy moves for summary judgment to reverse the Commissioner of the

13   Social Security Administration's (the "Commissioner's") final administrative decision, which found

14   McCarthy not disabled and therefore denied him application for benefits under Titles II and XVI of

15   the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*[1]  [Docket No. 26 ("Pltf.

16   Mot.").]  The Commissioner cross-moves to affirm.  [Docket No. 31 ("Def. Mot.").]  For the reasons

17   stated below, the court grants McCarthy's motion and denies the Commissioner's cross-motion.

18   **I.      PROCEDURAL HISTORY**

19          On September 30, 2008, McCarthy was found disabled as of March 1, 2008.  Administrative

20   Record ("A.R.") 111, 112.  This is known as the "comparison point decision" or CPD.  At the time

21   of the CPD, McCarthy had the following medically determinable impairments: affective (mood)

22   disorder and disorders of back (discogenic and degenerative).  A.R. 27, 111, 112.  On May 22, 2014,

23   pursuant to a continuing disability review, the Social Security Administration found McCarthy was

24   no longer disabled as of May 19, 2014.  A.R. 117, 141-44.  The determination was upheld on

25   reconsideration following a hearing before a Disability Hearing Officer.  A.R. 169-84.

26          McCarthy requested a hearing before an administrative law judge ("ALJ").  A.R. 190.  ALJ

27

28   _____
     [1] McCarthy filed a reply but did not add substantive argument.  *See* Docket No. 32.

United States District Court
Northern District of California

John Heyer held a hearing on May 1, 2017 and issued an unfavorable decision on June 21, 2017. A.R. 22-44.  The ALJ determined that McCarthy did not develop any additional impairments after the CPD through May 19, 2014 and that his impairments remained the same as of the CPD.  A.R. 27.  The ALJ found that medical improvement occurred as of May 19, 2014 and that starting on that date, McCarthy had the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) except lift 20 pounds; can complete an eight hour workday, if given the option to alternate between sitting and standing, in 30 minute increments; who is limited to simple repetitive tasks; and who needs to have access to a bathroom within two minutes of urgency.

A.R. 28.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including bench assembler, paper pattern folder, and microfilm document scanner, the ALJ concluded that McCarthy has been "capable of making a successful adjustment to work that existed in significant numbers in the national economy," and found him not disabled.  A.R. 37.

After the Appeals Council denied review, McCarthy sought review in this court.  [A.R. 1-7; Docket No. 1.]

## II.     CONTINUING DISABILITY REVIEW PROCESS

An individual is disabled for the purpose of receiving benefits under the Act if she demonstrates a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity that is expected to result in death or last for a continuous period of at least twelve months.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted.  42 U.S.C. § 421(i);

United States District Court
Northern District of California

20 C.F.R. §§ 404.1589-1590.   A claimant's benefits cannot be terminated unless substantial evidence demonstrates medical improvement in her impairment such that the claimant is able to engage in substantial gainful activity and is therefore no longer disabled.  *See* 42 U.S.C. § 423(f)(1); 42 U.S.C. § 1382c(a)(4); 20 C.F.R. § 416.994; *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th. Cir. 1995).   To determine if the claimant continues to be disabled for Title XVI benefits, an ALJ conducts a seven-step inquiry.[2]  20 C.F.R. § 416.994.

1.   At the first step, the ALJ determines whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does, the ALJ will find that the claimant continues to be disabled.

2.   At the second step, the ALJ determines if medical improvement has occurred.  If medical improvement has occurred, the ALJ will proceed to step three.  If medical improvement has not occurred, the ALJ proceeds to step four.

3.   At the third step, the ALJ determines whether medical improvement is related to the claimant's ability to work.  If it is, the ALJ proceeds to step five.

4.   At the fourth step, the ALJ determines whether an exception to medical improvement applies.  There are two groups of exceptions.  If one of the first group of exceptions applies, the ALJ will go to step five.  If one of the second group of exceptions applies, the ALJ will find that the claimant's disability has ended.

5.   At the fifth step, the ALJ determines whether all the claimant's current impairments in combination are severe within the meaning of 20 C.F.R. § 416.994(b)(5)(v).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the ALJ will find that the claimant is no longer disabled.

6.   At the sixth step, the ALJ assesses the claimant's RFC based on her current impairments and determines if she can perform past relevant work.  If the claimant has the capacity

---

[2] The ALJ used the eight-step analysis applicable in Title II cases.  Since the relevant regulations are virtually identical and McCarthy was covered under both Title II and Title XVI, the court cites the Title XVI standard here.

United States District Court
Northern District of California

1   to perform past relevant work, the ALJ will find that the claimant's disability has ended.  If not, the

2   ALJ proceeds to the final step.

3       7.      At the seventh and final step, the ALJ determines whether other work exists in

4   significant numbers in the national economy that the claimant can perform, given her RFC and

5   considering her age, education, and past work experience.  If the claimant can perform other work,

6   the ALJ will find that she is no longer disabled.  If the claimant cannot perform other work, the ALJ

7   will find that her disability continues.

8   **III.   STANDARD OF REVIEW**

9       Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

10  Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's

11  denial of disability insurance benefits when the ALJ's findings are based on legal error or are not

12  supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097

13  (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could

14  lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*,

15  402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance. *See Saelee*

16  *v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this

17  analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating

18  a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

19  Cir. 2006) (citation and quotation marks omitted).

20      If the evidence reasonably could support two conclusions, the court "may not substitute its

21  judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

22  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

23  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

24  inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035,

25  1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

26      The court has reviewed and considered the entire record.  For the purposes of brevity, only

27  the evidence relevant to the court's decision is summarized here.

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

## IV.     ISSUES PRESENTED

McCarthy argues that the ALJ erred in weighing the medical opinions and in assessing his credibility.  Although McCarthy is not explicit on this point, he appears to only challenge the ALJ's findings with respect to his physical limitations.  The Commissioner's arguments with respect to McCarthy's mental limitations are therefore moot.

## V.     DISCUSSION

### A.     Medical Opinions

#### 1.     Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion.  *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities.  *Reddick*, 157 F.3d at 722.  A treating physician's opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725

United States District Court
Northern District of California

1   (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d

2   599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's

3   opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot

4   constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v.*

5   *Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

6   1984), though a non-examining physician's opinion may be persuasive when supported by other

7   factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by

8   "non-examining medical expert . . . may constitute substantial evidence when it is consistent with

9   other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of

10  treating physician's opinion given contradictory laboratory test results, reports from examining

11  physicians, and testimony from claimant).  An ALJ "may reject the opinion of a non-examining

12  physician by reference to specific evidence in the medical record."  *Sousa*, 143 F.3d at 1244.  An

13  opinion that is more consistent with the record as a whole generally carries more persuasiveness.

14  *See* 20 C.F.R. § 416.927(c)(4).

15          **2.     Analysis**

16          Calvin Pon, M.D., performed a consultative orthopedic examination of McCarthy on April

17  22, 2014.  A.R. 507-09.  At the exam, McCarthy complained of low back pain, right ankle pain,

18  bowel and bladder incontinence, and left knee pain.  A.R. 507.  He told Dr. Pon that he could sit for

19  approximately 45 minutes at a time, stand for less than 5 minutes, and walk approximately 2 blocks.

20  McCarthy stated that he has a cane that he uses when his back pain is exacerbated, but he did not

21  bring the cane with him to the appointment.  A.R. 507.  Dr. Pon observed that McCarthy was alert

22  and in no acute distress, sat comfortably during the examination, and was "able to rise from the chair

23  and stand erect normally."  A.R. 508.  Dr. Pon wrote that McCarthy's gait was "normal with normal

24  cadence, gait velocity and stride length" and that he did not limp or use an assistive device.  A.R.

25  508.  McCarthy was able to squat halfway down (with symptoms of left knee pain) and rise

26  normally.  A.R. 508.  He was also able to get on and off the exam table normally.  A.R. 508.  Dr.

27  Pon found hypertrophy of the right ankle joint and soft tissue atrophy around the left knee joint.

28  A.R. 508.  Dr. Pon's diagnostic impression included a history of spinal fracture with spinal cord

injury, a history of right ankle fracture, and chronic left knee pain (probable degenerative arthritis). A.R. 509. With respect to McCarthy's functional limitations, Dr. Pon opined that McCarthy should be able to stand and/or walk for about four hours in an eight-hour workday and sit for six hours. A.R. 509. He wrote that McCarthy can occasionally stoop, crouch, kneel, and squat; can lift and carry ten pounds frequently and twenty pounds occasionally; and has no limitation in pushing, pulling, reaching, or performing manipulative tasks. A.R. 509.

On May 13, 2014, state agency medical consultant J. Zheutin, M.D., reviewed the medical evidence and determined that McCarthy can perform light work except that he is limited to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and avoiding hazards such as machinery and heights. A.R. 510-18. State agency medical consultant B. Morgan, M.D., affirmed this assessment on August 10, 2014. A.R. 522-30.

Irene Minkowsky, M.D., examined McCarthy at the request of his attorney. A.R. 555-66. Her April 18, 2017 report reviews the history of McCarthy's injury and self-reported symptoms. A.R. 555. She determined that recent MRI findings showed "severe central and foraminal spinal stenosis at L2-3, L3-4 with facet arthropathy" and a major lower thoracic kyphosis of the spine followed by a major lumbar lordosis.[3] A.R. 556. Dr. Minkowsky observed that McCarthy had a waddling gait, used a walker, and had labored breathing after taking a few steps. A.R. 556. She had a diagnostic impression of incomplete L1 paraparetic, with a neurogenic bladder and bowel; chronic, severe, and constant lower back pain requiring strong analgesics; severe lumbar stenosis with nerve compression; peripheral edema; pressure sores; and side effects from chronic use of Tramadol. A.R. 557. Dr. Minkowsky detailed how McCarthy's physical impairments explain his reported pain level. A.R. 558-59. She concluded that "it is inconceivable to imagine Mr. McCarthy working in any capacity either part time or full time with the amount of constant and severe pain

[3] It is not entirely clear, but it appears that Minkowsky reviewed the MRI findings dated February 6, 2017, from the San Mateo Medical Center. A.R. 571. The medical notes state that the MRI found solid osseous fusion across T12 through L2; degenerative disc disease at L2-L3 and L3-L4; facet arthropathy at L2-L3 through L5-S1; moderate canal stenosis at L2-L3; and moderate left neural foraminal narrowing at L2-L3. A.R. 571.

United States District Court
Northern District of California

1    requiring regular intake of Tramadol, his reduced level of alertness affecting focus, concentration

2    and performance, his major limitations in sitting, standing and walking, pulling, pushing, carrying,

3    lifting, driving, his demanding bladder and bowel schedule, his poor stamina, his skin lesions, leg

4    edema and increased risk of infection, deep vein thrombosis and his depression."  A.R. 559.

5         The ALJ assigned significant weight to the opinions of the state agency medical consultants.

6    A.R. 34.  He assigned some weight to the opinion of Dr. Pon but found that McCarthy is more

7    impaired than indicated by Dr. Pon.  A.R. 33.  While Dr. Pon opined that McCarthy could stand

8    and/or walk for a total of four hours and sit for six, the ALJ determined that McCarthy's limitations

9    require that he have the option to alternate between sitting and standing in thirty minute increments

10   and that he needs to have access to a restroom within two minutes of urgency.  A.R. 28, 33.  The

11   ALJ assigned little weight to Dr. Minkowski's opinion.  He provided three reasons to discount her

12   assessment: (1) she relies in part on an assessment of an impairment(s) for which she did not treat

13   McCarthy; (2) her opinion "contrasts sharply with and is without substantial support from the other

14   evidence of record"; and (3) she was retained by McCarthy's attorney and presumably paid for her

15   report.  A.R. 34.  McCarthy argues that the ALJ erred in assigning little weight to Dr. Minkowski's

16   opinion.

17        The ALJ's first reason for discounting Dr. Minkowski's opinion is that she was an examining

18   rather than a treating physician.  However, that rationale is insufficient to discount her opinion in

19   favor of the state agency medical consultants.  In *Lester*, the Ninth Circuit reviewed an ALJ's

20   decision to discount the opinion of an examining psychologist in favor of a non-examining source

21   because the examiner's conclusions were based on "limited observation" of the claimant.  *Lester*,

22   81 F.3d at 832.  In holding that the ALJ erred, the court stated: "While this would be a reason to

23   give less weight to [the examining psychologist's] opinion than to the opinion of a treating

24   physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined

25   the claimant."  *Id.*  In this case, the ALJ discounted an examining source's opinion in favor of a non-

26   examining source.  There are no treating source opinions in the record.  Under such circumstances,

27   it is error to discredit an opinion on the basis that it did not come from a treating source.

28   Accordingly, the court concludes that this is not a specific and legitimate reason supported by

8

1    substantial evidence to reject Dr. Minkowsky's opinion.

2        Next, the ALJ rejected Dr. Minkowsky's opinion on the basis that it conflicts with and is not

3    supported by the "other evidence of record."  A.R. 34.  However, the ALJ did not cite any portion

4    of the medical record in support of this conclusion.  He did not point to any records that undermine

5    Dr. Minkowski's findings or explain how her opinion is inconsistent with the medical evidence.

6    Without such explanation, the court cannot find that the ALJ's reasoning is supported by substantial

7    evidence.

8        Finally, the ALJ discounted Dr. Minkowsky's opinion because she was retained by

9    McCarthy's attorney and presumably paid for her report.  The Ninth Circuit has explicitly stated

10   that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for

11   rejecting them." *Lester*, 81 F.3d at 832.  In *Lester*, an ALJ rejected an examining psychologist's

12   opinion in part because the psychologist's reports "were clearly obtained by the claimant's attorney

13   for the purpose of litigation." *Id.*  The court held that "[a]n examining doctor's findings are entitled

14   to no less weight when the examination is procured by the claimant than when it is obtained by the

15   Commissioner." *Id.*; *see also Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993) ("The

16   Secretary may not assume that doctors routinely lie in order to help their patients collect disability

17   benefits.").  While the Secretary "may introduce evidence of actual improprieties," *Lester*, 81 F.3d

18   at 832, the ALJ in this case did not provide any other reason to doubt the integrity of Dr.

19   Minkowski's report.  Accordingly, the mere fact that Dr. Minkowski was retained by McCarthy is

20   not a specific and legitimate reason supported by substantial evidence to discount her opinion. *See*

21   *Lester*, 81 F.3d at 832.

22       There are other reasons to doubt the ALJ's evaluation of the medical opinions.  Specifically,

23   he assigned "significant weight" to the opinions of the state agency medical consultants and yet did

24   not incorporate some of the RFC assessed by those opinions.  Both state agency medical consultants

25   opined that McCarthy could perform light work except that he is limited to occasionally climbing

26   ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders,

27   ropes, or scaffolds; and avoiding hazards such as machinery and heights.  A.R. 510-18; 522-30.

28   These restrictions do not appear in the RFC assessed by the ALJ and he provided no explanation for

his decision to omit them.  It is error for an ALJ to credit a medical opinion and then fail to incorporate RFC assessed by that opinion.  *See Goytia v. Berryhill*, No. 14-cv-04498-EJD, 2017 WL 1150524, at *6 (N.D. Cal. Mar. 28, 2017) ("Having accepted [a medical source's] assessment of Plaintiff's moderate limitations, the ALJ was required to incorporate those limitations into an RFC at step four of the sequential analysis.").  Further, the ALJ discounted Dr. Pon's opinion to some extent because Dr. Pon did not account for McCarthy's need to alternate between sitting and standing.  The state agency medical consultants also did not impose this restriction but the ALJ did not similarly discredit their opinions on that basis.  Thus, the ALJ's evaluation of the medical opinions is perplexing and does not support his RFC assessment.

In sum, the ALJ's reasons for assigning Dr. Minkowski's opinion little weight are not supported by substantial evidence.  On remand, the ALJ must reevaluate the medical opinions in the record and assign them weight in a manner consistent with the regulations and this order.

### B.     Remaining Arguments

McCarthy argues that the ALJ erred in making an adverse credibility determination.  The court does not reach this argument in light of its conclusion that the ALJ erred in weighing the medical opinions.  The errors explained above may have impacted the ALJ's ultimate conclusion that McCarthy's testimony is not completely supported by the medical evidence.  For example, if the ALJ revisits the medical opinions and finds it appropriate to assess a more restrictive RFC, he may find that McCarthy's testimony is supported by the medical evidence.

## VI.     CONCLUSION

For the reasons stated above, the court grants McCarthy's motion, denies the Commissioner's cross-motion, and remands this case for further proceedings.

**IT IS SO ORDERED.**

Dated: November 3, 2020



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California